**FIRST NAT. BANK OF NEGAUNEE v. FOX.**

No. 8410.

Circuit Court of Appeals, Sixth Circuit.

May 13, 1940.

Clarence E. Lott, of Phoenix, Ariz., for appellant.

Ellis B. Merry, of Detroit, Mich. (Bulkley, Ledyard, Dickinson & Wright, of

Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a summary order in bankruptcy holding that appellant had received a voidable preference of $2,677.30 (11 U.S.C.A. § 96; 52 Stat. 869) and ordering its payment to the appellee, Abbott M. Fox, temporary trustee of the Weidman Lumber Company, debtor.

The facts are substantially as follows: On December 21, 1937, the debtor owed to the appellant, a national banking association, two promissory notes totalling $4,000 payable in full on or before January 1, 1938, and thereafter, the date not shown in the record, the notes were consolidated and renewed. Prior to January 18, 1938, appellant received from the debtor for collection, a check for $673.63, with the debtor as payee and the Consolidated Fuel and Lumber Company of Ishpeming, Michigan, payor, and on January 27, 1938, it appropriated this check to its own use by crediting it on the note of the debtor. Thereafter appellant accepted a renewal note of the debtor for $3,341.04, the difference between the credit and the original $4,000.

On February 24, 1938, the debtor sold to the Consolidated Fuel & Lumber Company, 100,000 feet of lumber for future delivery and on February 28 and March 4, 1938, respectively, it made two shipments on this order and mailed to appellant invoices of $317.54 and $318.75, respectively, the gross selling price, and in its letter of transmittal stated, "In the future we will mail you duplicate of all invoices to Consolidated which are to be applied against our note to your bank."

It is alleged in the petition of the trustee that this was done because appellant had advised the debtor it would appropriate and credit on its note all checks that came into its possession with the debtor as payee and the Consolidated Fuel & Lumber Company as payor.

On March 16 and 29, 1938, respectively, checks came into the possession of the bank in payment of the above invoices for the aggregate sum of $629.94 and appellant appropriated them to its own use and credited them on the debtor's note. The debtor was then, and thereafter remained, insolvent, all of which was known to the appellant.

About this time, a meeting of the creditors of the debtor was held in which appellant's representatives participated and because of its insolvency, on April 1, 1938, they caused George L. Conners to be appointed equity receiver in an action instituted by them in the state court of Michigan.

On April 18, 1938, the receiver consulted with the cashier of appellant about completing the contract with Consolidated, who insisted if it were done, the sums realized from the sale would have to be applied to the liquidation of the bank's indebtedness because, as he contended, the original contract was conditioned on the sums received under it being paid to the bank until its note was paid.

The lumber necessary to fill the remainder of the order had been processed theretofore and on April 23, 1938, was placed in the custody of an independent warehouseman and his receipts pledged to the Citizens State Bank of Ontonagon, Michigan, and Merchants State Bank of Rhinelander, Wisconsin, as collateral security for indebtedness of the debtor to these banks. On or about April 23, 1938, the banks delivered these receipts to the receiver under an agreement that he would pay their debts out of the proceeds.

On April 22, 1938, the court approved the answer of the debtor filed in these proceedings instituted against it under Section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207, and appointed appellee temporary trustee and referred the cause to a Special Master. The receiver delivered the warehouse receipts to the appellee, who, under the court's orders, completed the sale and delivery to the Consolidated, the proceeds being deposited with the appellant, out of which it retained $2,047.36, the remainder being paid to the holders of the warehouse receipts.

On June 12, 1939, the Special Master granted an order ex parte which was served on appellant, directing it to show cause why it should not pay over to the trustee $629.94 received by it March 29, 1938, and the $2,047.36 which it was withholding, to which appellant filed no response and thereupon the Special Master fixed a date for taking proof, due notice of which was served on appellant. Proof was heard without it being present or represented and the Master made a report in which he separately stated the law and facts and filed it with the court. The facts so found

are substantially as heretofore related. Appellant duly filed exceptions in which it requested that the report be vacated and overruled because (1) the court lacked jurisdiction to try a claim of voidable preference in a summary proceeding without the consent of the respondent, (2) the court was without jurisdiction to deal summarily with funds adversely claimed, (3) it lacked jurisdiction to deal summarily with funds out of the possession of the bankruptcy court.

The court overruled appellant's exceptions and entered an order directing it to pay to appellee $2,677.30 from which order this appeal is prosecuted. Two questions are presented: (1) whether appellant consented to the jurisdiction of the court, and (2) whether the court, without its consent, had jurisdiction to enter the order.

 A trustee in bankruptcy seeking to set aside a preference is subject to the rule of pleading that his complaint, declaration or petition must allege each of the requirements for recoverable preference and the burden rests on him of making out a case by proving the essential elements of or facts constituting a voidable preference and if the proceedings be summary, the burden rests on him of both alleging and proving facts supporting the jurisdiction of the court to thus proceed. Buss v. Long Island Storage Warehouse Company, 2 Cir., 64 F.2d 338. These prerequisites are indispensable to a judgment such as the trustee here seeks to sustain. Sherrill v. Leech et al., 6 Cir., 171 F. 622. Since these essentials must be present in every case, the failure of appellant to respond to the show cause order or to present evidence did not amount to a waiver or consent to jurisdiction and its exceptions to the Special Master's report was not a general appearance.

It might have objected by answering or by a motion to dismiss before the Master, or the Master might have compelled it to answer or to plead to the trustee's petition. This would have been the proper practice but there is no fact from which an inference might be drawn that it consented to the jurisdiction of the court. In re Wood, 2 Cir., 278 F. 355; Dahlgren v. Pierce, 6 Cir., 263 F. 841. There is left in the case the issue of the sufficiency of the evidence to support the present order.

 In the absence of consent the bankruptcy court has no jurisdiction to entertain a summary proceeding to recover property alleged to belong to the bankrupt estate and held by an adverse claimant in good faith. MacDonald v. Plymouth County Trust Company, 286 U.S. 263, 268, 52 S.Ct. 505, 76 L.Ed. 1093; Galbraith v. Vallely, 256 U.S. 46, 47, 50, 41 S.Ct. 415, 65 L.Ed. 823. It is inaccurate to say that the court in all cases lacks jurisdiction over the subject matter. The objection to summary procedure does not go to the basic jurisdiction of the court but to its authority to proceed in a summary way. The power over a bankrupt's estate, like that of any other proceeding in rem, depends primarily on actual custody. Having acquired possession of the res, it may award it to its lawful owner. However, the court's control is not limited to property of which it has actual custody through its officers, but it may also seize summarily other property said to be "constructively" in its possession at the time the petition is filed. This incidental power includes property in the possession of one who acknowledges he holds it subject to the bankrupt's demand or under an adverse claim which is patently absurd or made in bad faith or merely colorable. Mueller v. Nugent, 184 U.S. 1, 18, 22 S.Ct. 269, 46 L.Ed. 405; Babbitt v. Dutcher, 216 U.S. 102, 115, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969; Tauble, etc., Co. v. Fox, 264 U.S. 426, 433, 44 S.Ct. 396, 68 L.Ed. 770; May v. Henderson, 268 U.S. 111, 116, 45 S.Ct. 456, 69 L.Ed. 870.

 The determination of jurisdiction to dispose summarily of the question of title to property to which a claim is asserted against that of the bankrupt when such jurisdiction is not consented to will depend upon the nature and validity of such claim. If the property belongs unquestionably to the bankrupt's estate, the court may take possession of it summarily. The mere assertion of an adverse claim is not enough to oust the court of its summary jurisdiction.

The trustee contends that appellant in applying $629.94 as a credit on the note and withholding for that purpose the $2,047.36, which arose from collecting the checks, obtained a preference and that, having at that time reasonable cause to believe that such preference would result, the transfer was voidable under the Bankruptcy Act (11 U.S.C.A. § 96, 52 Stat. 869).

 He further insists that appellant's claim to the funds is merely colorable and that it could be required summarily to

pay them to him. Appellant contends that the evidence shows that the funds were not in the actual or constructive possession of the Bankruptcy Court and that it holds them in good faith and that neither the pleadings nor evidence support appellee's contention that its title to the funds can be determined in a summary proceeding. Such proceedings may be invoked to compel a bank to pay to the trustee deposits in its possession belonging to the bankrupt estate where its adverse claim is colorable only and the sole question for decision here is whether the petition of the trustee and the evidence in support thereof justify the conclusion that the bank asserts such an adverse claim to the deposits.

It is well-settled that in the absence of fraud and collusion or intent to effect a preference, a bank may set off a deposit made in the ordinary course of business, and subject to withdrawal by the depositor even though it may know the depositor is insolvent at the time. New York County Nat. Bank v. Massey, 192 U.S. 138, 148, 24 S.Ct. 199, 48 L.Ed. 380. This right does not exist if the bank accepts the deposit knowing it is made for a special purpose or is subject to a trust for the creditors of the depositor. Twentieth Street Bank v. Gilmore, 4 Cir., 71 F.2d 594, 597.

In January, 1938, appellant began to appropriate deposits of the debtor to its own use by crediting them on the indebtedness of the debtor to it. It is perfectly clear from the evidence that thereafter all the deposits or checks for collection it received from the debtor were used with the obvious intent to apply them on its claim and to gain an advantage over the other creditors. The record discloses no intention on the part of the bank after January 18, 1938, to hold any of the deposits or collections of the debtor subject to check or that the depositor could withdraw them or use them in conducting its business. In our opinion there can be no question that appellant accepted both of the present deposits with the intent to apply them on its note. Kane v. First National Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362; Rupp v. Commerce Guardian Trust & Savings Bank, 6 Cir., 32 F.2d 234; Elliotte v. American Savings Bank & Trust Co., 18 F.2d 460; In re Times Square Auto Supply Co., 2 Cir., 47 F.2d 210; May v. Henderson, supra.

The findings and conclusions on the subject of summary jurisdiction as found by the Special Master and concurred in by the court were supported by substantial evidence and there is nothing in the record indicating plain mistake. In re Maki, 6 Cir., 18 F.2d 89.

The order is affirmed.