**In re JOURNAL–NEWS CORP.**

United States District Court
S. D. New York.

Dec. 11, 1951.

Charles Seligson, New York City, for Trustee.

Nathan Immerman, New York City, for petitioner.

SUGARMAN, District Judge.

On August 31, 1951, the Journal News Corporation (debtor herein) filed a voluntary petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Said petition was approved on August 31, 1951, and ·Charles Seligson was appointed trustee. The trustee, by order to show cause dated September 18, 1951, brought this proceeding against respondents, S. Judson, The Day Publishing Co., Inc., Morris Weinberg, Maurice Brooks and Goodwin Weinberg, seeking (1) an adjudication that said respondents are in contempt of court by reason of willful interference with and appropriation of certain assets of the debtor; (2) a direction that respondents surrender to the trustee certain literary property of the debtor and (3) an injunction restraining further interference with the debtor's literary property.

The trustee's petition alleges that the debtor publishes and distributes a daily Jewish (Yiddish) language newspaper in New York City, the "Jewish Journal and Daily News"; that one of the features thereof is a column written under the by-line "Doctor A. Klorman", which consists of advice given to persons soliciting the same and general information concerning personal, psychological, family and social problems; that this feature has appeared without interruption in the debtor's newspaper since about the year 1921, except for the period between April 11, 1951 and August 30, 1951 when publication was suspended by the debtor; that the "Dr. A. Klorman" column has been written by various employees, and is a literary property belonging to the debtor which, together with correspondence, notes, manuscripts, files and other papers and documents used in connection therewith, have been appropriated by the respondents in violation of an order of this court made August 31, 1951 wherein all persons were stayed from interfering with the trustee's management and control of the debtor's property.

The unlawful appropriation of the debtor's property is alleged in said trustee's petition to have been effected as follows: The respondent, Solomon Judson, from about December, 1938, until April 11, 1951,

excepting a period of several months in 1948, was the person in the debtor's employ who wrote the "Dr. A. Klorman" column for it. After publication of debtor's newspaper was suspended, Judson, it is claimed, fraudulently and illegally agreed with respondent The Day Publishing Co., Inc., publisher of a competing Jewish (Yiddish) language newspaper entitled "The Day", to write the "Dr. A. Klorman" column for "The Day". Respondents, Morris Weinberg, Maurice Brooks and Goodwin Weinberg are officers of The Day Publishing Company, who are believed by petitioner to have taken part in the alleged unlawful appropriation of the debtor's literary property by Judson and The Day Publishing Company. On September 11, 1951, the trustee alleges that, by letter to each, he advised Judson and The Day Publishing Company, Inc. of his appointment as trustee; that they were appropriating debtor's literary property and good will and that he demanded that they cease and desist at once from further misappropriation of such property of the debtor. Despite these letters, the "Dr. A. Klorman" column has allegedly appeared in "The Day" to the irreparable injury of the debtor.

The respondents in their answer assert that (1) this Court has no jurisdiction of respondents because of insufficiency of process; (2) this Court has no jurisdiction of respondents because service of process on each of them was insufficient; and (3) the petition fails to set forth a claim upon which relief can be granted. As a fourth defense, the respondents' answer substantially admits the allegations of the petition but denies that the daily feature, the "Dr. A. Klorman" column, and its connected papers and documents are the debtor's property; that respondents are fraudulently and unlawfully withholding and using any of the debtor's assets; and that there was any unlawful agreement among them resulting in irreparable injury to the debtor.

By order to show cause dated October 4, 1951, Solomon Judson countered with an application that he be authorized by this Court to commence an action or proceeding to enjoin the debtor and the trustee from using the pseudonym "Dr. A. Klorman" or interpose a counterclaim for such relief in the trustee's motion for injunction aforesaid, and that the order of this court, entered on August 31, 1951, be so modified. In support of that petition, Judson alleges that he is the owner of the literary property in the "Dr. A. Klorman" column, having written it in the Yiddish press from 1938 to the present almost continuously. He claims that this column is part of his stock in trade as a writer and indicates his literary work, and has acquired an association in the public mind with him as its source. Judson alleges that he arranged to write that column for the Day Publishing Company, Inc., on June 12, 1951, and that he does so to the time of his petition. He further alleges that the debtor herein is inflicting irreparable harm upon him and defrauding the public by publishing a "Dr. A. Klorman" column in its newspaper in violation of his literary property in that column. The trustee's answer to this petition denies that the "Dr. A. Klorman" column is the property of Judson, and denies that the debtor's continued publication of this column infringes on any right of Judson's.

The issues came on for hearing on November 2, 1951 at which time it was agreed that the issues in each petition being the same, they would be tried together and that the respondent's defences to the trustee's petition be limited to two, namely, (1) that this Court does not have summary jurisdiction to try the issue of ownership of the literary property in the "Dr. A. Klorman" column, but that the trustee is confined to a plenary suit, and (2) that even if the Court has summary jurisdiction, no relief can be granted on the facts as stated. The respondents abandoned the defence that notice of the trustee's petition was given by mail.

This Court has summary jurisdiction to try the title to the literary property in question if the claim adverse to the trustee is merely sham or colorable. 6 Collier on Bankruptcy (14th ed.) 594 and cases cited therein.

"If the property belongs unquestionably to the bankrupt's estate, the court may take possession of it summarily. The mere assertion of an adverse claim

is not enough to oust the court of its summary jurisdiction." First National Bank of Negaunee v. Fox, 6 Cir., 1940, 111 F.2d 810, 813.

From the uncontradicted testimony of the trustee's witness, Meckler, it appears that Meckler is now the managing editor of the debtor and was first employed by it in 1919. In 1921 he was on the editorial staff, at which time a "Dr. Edelman" column appeared regularly in the debtor's newspaper, similar in content to that of the present "Dr. A. Klorman" column. A Mr. Zevin wrote that column under the pseudonym "Dr. Edelman" until his death in 1927. The then editor, Mr. Fischman, elected to change the name of the column to "Dr. A. Klorman" and he selected a Dr. L. Zolotkoff to continue to write the column for the debtor under that by-line. Dr. Zolotkoff did so until his death in 1938, assisted by one David Bernstein who frequently wrote the column under the "Dr. A. Klorman" by-line because of Dr. Zolotkoff's ill health. On Dr. Zolotkoff's death in 1938, Meckler himself wrote the column until he selected respondent Judson to carry on the duty of writing it. Judson was a salaried employee of the debtor, devoting full time exclusively to this employment, receiving wages of about $100 a week. Judson had been in debtor's employ for at least twenty years as a regular salaried employee prior to 1938. When Judson took ill in 1948, the column was written by other regular salaried employees of debtor under the same by-line until Judson returned. Judson continued writing the column for the debtor until publication was suspended on April 11, 1951. In addition to writing the column, it was his duty to read manuscripts, correct copy, act as music editor and do other work. There was no agreement, written or oral, between Judson and the debtor concerning the ownership of the "Dr. A. Klorman" column, nor did Judson ever claim ownership of it.

There is no evidence of any special agreement between the debtor and Judson that the latter should own or have any proprietary rights in the literary property claimed. Judson made no original contribution to the feature and merely carried out his assigned duties as an employee of the debtor.

The uncontradicted testimony of the trustee's witness Bernstein, shows that he has written the "Dr. A. Klorman" column for the debtor since it resumed publication on August 30, 1951. The column under the same by-line appearing in "The Day" is the same in nature as that appearing in the debtor's publication. Bernstein further identified a compilation of excerpts from the "Dr. A. Klorman" columns in book form which had been compiled by Dr. Zolotkoff at the suggestion of Jacob Fischman, the then editor of the debtor. The book was published under the "Dr. A. Klorman" penname and Fischman, according to the flyleaf inscription secured a copyright thereof in 1931. Bernstein further testified that Dr. Zolotkoff had made the compilation and marketed it, "most likely" receiving the revenue from it. Dr. Zolotkoff in the introduction to this book had inscribed the following:

"Appreciation. My sincerest or deepest thanks are hereby expressed to my friend and colleague, Mr. Jacob Fischman, managing editor of the Morning Journal, for the friendly inducement and cooperation in the publishing of this book. Dr. A. K.".

The respondents established, on cross-examination of Mr. Meckler, that a real Dr. Klorman, a doctor of medicine, had in prior years, written a column for respondents' newspaper, "The Day", but this column dealt solely with medical problems. On redirect examination, it was shown that this medical column in "The Day" first appeared more than ten years after the debtor's fictitious "Dr. A. Klorman" was regularly published in the debtor's newspaper.

It was conceded by respondents that Judson was employed by "The Day" on June 23, 1951 and his first "Dr. A. Klorman" column appeared in that paper two days later with the approval of "The Day's" officers.

Notice to the respondents Judson and The Day Publishing Co., Inc. of interference with the debtor's literary property was established by trustee's exhibits 4 and 5, let-

846

ters dated September 11, 1951, written by the trustee demanding that they desist from further misappropriation of the "Dr. A. Klorman" column. Respondents further conceded that "The Day" has continued to publish the column since receipt of the notice.

Damage was established by Mr. Meckler's testimony that confusion has resulted in the public mind from the fact that respondents have appropriated the debtor's property, one of the popular features of the debtor's newspaper; some of the readers stating that they thought that the same person writes the column for "The Day" and the "Jewish Journal & Daily News".

Upon the pleadings and testimony summarized above, the Court concludes that the debtor is the exclusive owner of the literary property in the "Dr. A. Klorman" column and that there is summary jurisdiction to try the title thereto. It is also concluded that Judson's alleged ownership is merely a claim without substance. Brown v. Molle Co., D.C.S.D.N.Y.1937, 20 F.Supp. 135.

There is no merit to the respondent's claim, first advanced at the hearing, that the debtor abandoned its rights in the column on suspension of publication. There is no evidence to indicate an intention on the debtor's part to abandon any of its property at any time. Mathy v. Republic Metalware Co., 35 App. D.C. 151.

Accordingly, the trustee's petition is granted, and (1) the respondents shall immediately cease and desist from further use or appropriation of the debtor's literary property in the "Dr. A. Klorman" column by publication of a similar column under the same or a deceptively similar name in "The Day"; (2) the respondents shall turn over to the trustee any correspondence and other papers and documents relating to that column which they have or control; (3) if the trustee is so advised, he may procure an order that the respondents Solomon Judson and The Day Publishing Co., Inc., show cause before this Court why they should not be punished for contempt for disregarding the order of this Court made on August 31, 1951, forbidding interference with the trus-

tee's management and control of the debtor's property.

Nothing contained herein shall be construed as a restraint on the respondents from publishing a feature with subject matter similar to that in the debtor's column, provided the title thereof does not simulate the debtor's by-line "Dr. A. Klorman". New York Herald Co. v. Star Co., C.C.S.D. N.Y.1906, 146 F. 204.

The petition of Solomon Judson is in all respects denied.

Settle order.