martial" is "without persuasive value."[13]

In Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 498, 94 L.Ed. 691, the Supreme Court held, inter alia,

"* * * It is well settled that 'by *habeas corpus* the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * *. The single inquiry, the test, is jurisdiction.' * * * In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision. * *"[14]

It is not the function of a federal civil court to grant habeas corpus simply to re-evaluate the evidence.[15]

Petitioner does not challenge the jurisdiction of the person of the accused, the offense charged, or the propriety of the sentence imposed. He alleges, inter alia, as errors, failure to comply with the provisions of the Uniform Code of Military Justice and the Manual for Courts-Martial, United States 1951, which as has been indicated, were not applicable to the trial and review of his case, and then contends that the cumulative effect of these and other alleged errors denied him the substance of a fair trial and that this deprived the General Court-Martial of jurisdiction.

It is quite evident that although characterized as an attack on the jurisdiction of the Court-Martial petitioner's approach is in reality an attempt to secure a redetermination of the issues and a re-evaluation of the evidence, neither of which come within the purview of habeas corpus.

The Rule to Show Cause must accordingly be dismissed and the Petition for Writ of Habeas Corpus denied.

### In re POSTON CONST. CORP.

Bankr. No. 68375.

United States District Court
N. D. Ohio, E. D.

Sept. 10, 1953.

---

13. Action by the Judge Advocate General upon petition of defendant for relief under Section 12, Act of May 5, 1950, 50 U.S.C.A. § 740, Respondent's Exhibit B., page 7.

14. See also McClellan v. Humphrey, supra.

15. Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045.

Donald F. Kepple, Akron, Ohio, Trustee.

Wm. G. Roderick and Kent W. Woodward, Akron, Ohio, for trustee.

Wells & Marks and Paynter & Show, Cleveland, Ohio, for Hattendorf-Bliss, Inc.

Johnson, Whitmer & Sayre, Cleveland, Ohio, for bankrupt.

JONES, Chief Judge.

This matter is before the court upon the petition of Hattendorf-Bliss, Inc., for review of the referee's order of December 3, 1952, disallowing its claim.

Hattendorf-Bliss filed its claim in the amount of $7,807.21 for rental of equipment to the bankrupt during the months of July, August, and September, 1950. By separate rental purchase agreement, it had leased other equipment to the bankrupt in April, 1949. This agreement was converted to an outright sale with note and mortgage in December, 1949. The purchase price was $25,630.-30—after allowances for rentals and interest already paid. The bankrupt made no further payments, and in May and June, 1951, seven pieces of the equipment were returned to petitioner. They were then sold by petitioner for $26,936.-92.

The bankrupt filed its voluntary petition on July 2, 1951, and adjudication followed thereafter.

In proceedings before the referee, the trustee objected to the claim of Hattendorf-Bliss on the ground that the claimant had received a voidable preference from the bankrupt, which preference, under Section 57, sub. g, of the Bankruptcy Act, it was required to surrender before its claim might be allowed.

In its answer, Hattendorf-Bliss, admitted receipt of the equipment from the bankrupt, prior to bankruptcy and within four months thereof. It denied, however, that the bankrupt was insolvent when the equipment was returned, or that it knew, or had reasonable cause to believe that the bankrupt was insolvent. It alleged that the machinery was taken back by it in due course, and credited on a mortgage note. While it admitted that the court might try the objection to its claim, it objected to the jurisdiction of the court to try the preference suit. It asserted that the trustee was not in possession of the chattels and that, therefore, it was an adverse party. It moved to dismiss the objection to its claim.

A hearing on the objections was had before the referee. On December 3, 1952, the referee entered his order that the claim of Hattendorf-Bliss be disallowed unless the claimant surrendered to the trustee the chattels received as a preference, or paid their value within thirty days.

The petition for review asks that the order of the referee be set aside and the claim allowed. Numerous errors in the findings and conclusions of the referee are assigned. Three substantial questions are raised: The questions of (1) jurisdiction, (2) reasonable cause to believe, and (3) insolvency.

Although the petitioner by answer did request "that the objection to its claim be tried fully", and the trustee's objection was based solely upon the preference obtained by the petitioner, nevertheless, I think it definitely cannot be found that the petitioner thereby consented to summary jurisdiction respecting the preference, or that the petitioner's claim to the equipment was merely colorable. However, the exercise of jurisdiction in this instance must be sustained, for reasons to follow.

In determining the validity and allowability of petitioner's claim, it became the duty of the referee to determine, when the trustee raised the question as a defense, the preferential status of the petitioner; and this would be so whether or not the claimant petitioner requested "that the objections to its claim be tried fully." It well may be that a plenary suit under Sections 23 and 60

of the Act will be required to set aside the alleged preferential transfer and secure the property or its value, but that is something other and different from disallowing the claim on the ground that there has been a preferential transfer and no surrender of the preference. See, however, In re Nathan, D.C.S.D.Cal.1951, 98 F.Supp. 686, where jurisdiction to summarily render an affirmative judgment on trustee's counterclaim for a preference was sustained. The counterclaim arose out of the same transaction as did the creditor's claim. See also, discussion of this problem in Journal of the National Association of Referees in Bankruptcy, Vol. 27, No. 3, pp. 90–92.

As stated earlier, Section 57, sub. g, of the Bankruptcy Act required surrender of the preference as a condition for allowance of the claim. Unless the referee determined upon hearing whether there had been a preference, he would not be in position to fulfill the mandate of the statute.

The referee's exercise of jurisdiction is in accordance with the well established rule in bankruptcy cases. Giffin v. Vought, 2 Cir., 1949, 175 F.2d 186; Schwartz v. Levine & Malin, Inc., 2 Cir., 1940, 111 F.2d 81; Metz v. Knobel, 2 Cir., 1927, 21 F.2d 317. See, however, B. F. Avery & Sons Co. v. Davis, 5 Cir., 1951, 192 F.2d 255, contra.

■ Petitioner concedes that its mortgage covering the equipment returned to it was not properly recorded, and is void under the applicable state statute. Ohio General Code, §§ 8560–8561. It has only the standing of a general creditor and not that of lien-holder.

■ The referee disallowed petitioner's claim because he found that every element of a voidable preference was present and established. In this review, the rule applies that the referee's findings may not be disturbed unless found to be clearly erroneous.

■ The exhibits introduced at the hearing before the referee, the transcript of testimony, and the briefs of the parties have been carefully considered.

The evidence disclosed in the record supports the finding and conclusion of voidable preference.

Petitioner's officers were also officers and directors of the bankrupt corporation. As such, they were in a position to know, ultimately, of the financial condition of the bankrupt, even though it may be conceded that proper books were not kept.

■ Petitioner, through its officers, had reasonable cause to believe the bankrupt was insolvent when the equipment was returned to it. Circumstances which carry absolute conviction of insolvency need not be present. Prudential Ins. Co. of America v. Nelson, 6 Cir., 1938, 96 F.2d 487.

Early in 1950 the bankrupt corporation began to sustain losses in its operations. This fact was verified by an auditor's report on May 27, 1950. Thereafter, the directors of the corporation expressed concern over its financial condition. Unable to secure accurate financial data, petitioner's officers sent their own auditor to investigate the affairs of the bankrupt in January, 1951, and he conducted an audit for nineteen days. Special meetings of the Board of Directors followed in February, 1951, at which time the financial condition of the corporation was discussed.

Petitioner's officers learned from their own auditor of large withdrawals of corporate funds by the president which allegedly were not accounted for. They also discovered that the corporation was heavily indebted to the Government for taxes and to other creditors. They knew of large expenditures which had been made for equipment. These were signs "which to a careful creditor pointed unerringly to a critical stage having been reached in * * * the (corporation's) affairs." Prudential Insurance Co. of America v. Nelson, supra, 96 F. 2d at page 491.

■ Knowledge or belief must be inferred from all the circumstances. Circumstances have been shown, pointing to knowledge or reasonable cause to

believe that the bankrupt was insolvent at the time of the transfer. In this connection, the referee had the right to consider the evasiveness of petitioner's auditor when testifying as to the knowledge gained by him and presumably passed on to petitioner.

The referee's finding and conclusion of "reasonable cause to believe" is supported by the evidence.

■ The evidence on the question of actual insolvency at the time of the transfer is conflicting. It was for the referee to judge its weight and sufficiency in support of the contentions of the parties, as well as to judge the credibility of the witnesses and their interest in the case when testifying with respect to the various audits.

The court appointed auditor found insolvency as of December 31, 1950, continuing thereafter month by month up to and including the date of bankruptcy. Also, the auditors of the bankrupt estimated that it was insolvent as of December 31, 1950.

By adjustment of the figures in the court audit as of the date of bankruptcy to a supposed fair valuation of assets, petitioner attempts to show solvency as of that date, and a probability of solvency as of the time of the transfer. The evidence, however, does not support nor furnish justification for these adjustments.

It is true that the personal account of the president of the bankrupt was not in good order. The data at hand indicates a probable balance in favor of the bankrupt as of the date of bankruptcy. Fairly evaluated, however, this account had little in asset value, and its inclusion as an asset could not materially alter the financial picture of the bankrupt nor overcome the deficit shown.

The same is true for the contracts on hand immediately prior to bankruptcy. It is conceded that the corporation was not "liquid". The resignation of Hattendorf and Bliss as directors of the corporation further impaired its credit. The corporation possessed little in "go-ing-concern" value. Only through the intervention of bankruptcy was it able to retain its contracts and continue its operations.

Widely divergent values are placed upon the inventory of equipment by the court auditor and auditors of petitioner. It was the province of the referee to resolve this conflict in the evidence.

The record discloses every element of voidable preference and supports the referee's findings and conclusions.

Accordingly, the order of December 3, 1952 will be confirmed, and the petition for review dismissed.

### UNITED STATES v. MESAROSH et al.
### Cr. No. 13531.

United States District Court,
W. D. Pennsylvania.

Sept. 3, 1953.

See also D.C., 13 F.R.D. 180.

