**In the Matter of PADDOCK OF CALIFORNIA, a California corporation, Debtor.**

**No. 148704.**

United States District Court
S. D. California,
Central Division.

Jan. 30, 1964.

Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for receiver.

Burke, Williams & Sorensen, Los Angeles, Cal., for petitioner and appellant.

BYRNE, District Judge.

On December 3, 1962, Paddock of California, Debtor, filed a petition for an arrangement pursuant to the terms of Chapter XI of the National Bankruptcy Act (11 U.S.C. § 701 et seq.). Among the assets of the Debtor's estate were the names "Paddock of California", "Paddock", "Marlin", and "Refinite", which were trade names of great value, and which, together with the good will associated with them, represented the major assets of the estate.

On February 28, 1963, the Referee confirmed a sale of these assets by the Receiver to Paddock Pool Builders Equipment Company, Inc., Buyer. All existing franchise agreements between the Debtor and others were also sold to the Buyer. As one of the terms of the sale the Receiver made the following agreement:

"The receiver, for and on behalf of the debtor, agrees to defend the use

of the name PADDOCK, MARLIN and REFINITE in any form or combination of forms, as hereinbefore described, on behalf of the Buyer from any unauthorized use, but not to exceed four persons, corporations or entities. The Buyer may invoke this clause during the term provided for royalty payments herein by written demand upon the receiver or the receiver's counsel, naming the specific persons, corporations or entities which the Buyer deems to be making unauthorized use of the names hereinabove described. Upon receipt of such demand, the receiver shall be obligated to use his best efforts to obtain injunctive process and other remedies as may be appropriate to prevent the continued unauthorized use."

On September 5, 1963, the Receiver applied to the court to issue an order to show cause to Central Paddock Pools Corporation, Petitioner, for the ultimate purpose of declaring a certain franchise agreement void, and to enjoin the Petitioner from using the name "Paddock". An order to show cause issued and hearing was set for September 17, 1963.

On September 27, 1963, the Referee's order issued. The order indicated that the Petitioner had failed to file any written response etc., as required by Rule 203 of the Local Rules, Southern District of California, and that it was in default. Thus, on what was then before him he ordered the Petitioner's franchise cancelled and enjoined it from using the names in any combination whatever.

On October 18, 1963, the Petitioner filed its petition for review alleging, in effect, that the court was without jurisdiction to proceed in this matter and that the order was, therefore, null and void. The basic subject-matter jurisdiction of the bankruptcy court in an arrangement proceeding is set out in 11 U.S.C. § 711, which reads:

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."

In their memoranda to the court, both the Receiver and the Petitioner have discussed the question of consent to jurisdiction. When one speaks of jurisdiction and consent in bankruptcy cases one must really consider this at two levels. Perhaps the distinction between them is best indicated by the statement of the court in First National Bank of Negaunee v. Fox, 111 F.2d 810, 813 (6th Cir. 1940):

"In the absence of consent the bankruptcy court has no jurisdiction to entertain a summary proceeding to recover property alleged to belong to the bankrupt estate and held by an adverse claimant in good faith. * * It is inaccurate to say that the court in all cases lacks jurisdiction over the subject matter. The objection to summary procedure does not go to the basic jurisdiction of the court but to its authority to proceed in a summary way."

In other words, if the dispute in this case is not over the question of whether or not certain property belongs to the Debtor or to the Petitioner, this is not really the sort of case where the plenary-summary problem comes up. Here the contention of the Petitioner is not, "I have title to property which the Receiver is attempting to take away from me on grounds that it belongs to the Debtor, and that question must be litigated in a plenary action." Nor does the Receiver make the contrary contention. In this case the Petitioner states that on the facts which are admitted by both parties —and which need not be litigated—this dispute does not involve the property of the debtor. No one doubts that possession, if such there be, and title to the "Names" and franchise agreements passed to the Buyer at the confirmation of the sale to it. See Coulter v. Blieden, 104 F.2d 29 (8th Cir.), cert. denied, 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488 (1939).

If it is true that this case does not involve the Debtor's property, can these parties consent to the jurisdiction of the court? The answer to this question has been given again and again. Thus, in Kaplan v. Guttman, 217 F.2d 481 (9th Cir. 1954) the bankrupt had listed certain property among his assets. A dispute over who had the right to the property developed between two other parties. The bankrupt was also involved in this dispute. After a hearing the referee found that the bankrupt had no interest in the property. He then went on to decide the dispute between the other two parties. The court found that this was improper and said, 217 F.2d pages 484–485:

> " 'The Bankruptcy Court has no jurisdiction in controversies between third parties not involving the debtor or his property' * * *.
>
> " * * * It is an axiom that consent cannot provide jurisdiction. Only where Congress has conferred power on the court to hear and determine a particular kind of controversy, can adverse parties consent to exercise of judicial authority over persons or rights. But it has been seen here, no mandate has been given by law to settle this dispute between third parties as to property in which bankrupt had neither right, title, interest nor possession. Consent is of no avail."

And in In re Cord-Way Products, 79 F.Supp. 672 (E.D.N.Y.1948) two parties claimed liens upon the bankrupt's property, and also had matters of contention between themselves. The Referee found that neither party had any lien on the property of the bankrupt, but went on to decide the dispute between them. The court said that this was erroneous, for the parties were strangers to the proceeding once it was decided that they had no liens. It then stated, 79 F.Supp. page 674:

> "Parties may consent to a particular form of procedure in the Federal court, such as the summary jurisdiction of the bankruptcy court. But consent to a particular form of trial is in vain where, as here, jurisdiction (in the sense of the power to decide a controversy) was totally lacking."

See: Evarts v. Eloy Gin Corp., 204 F.2d 712 (9th Cir.), cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953) (where a party tried to spell out causes of action against the Receiver and third parties the court had no jurisdiction of the other actions since it could only hear disputes involving the debtor or his property.); In re Journal-News Corp., 193 F.2d 492 (2d Cir. 1951) (where the debtor had no property interest in certain stock the bankruptcy court had no jurisdiction with respect to that stock.); Nixon v. Michaels, 38 F.2d 420 (8th Cir. 1930) (where a certain payment was made to a claimant by the trustee, the court did not have subject matter jurisdiction to decide whether or not a third party should have an interest therein, for the matter did not concern the debtor's property or any of the estate's creditors); In re Chakos, 24 F.2d 482 (7th Cir. 1928) (where a dispute did not involve the bankrupt or his property jurisdiction could not be conferred by consent.); and Henrie v. Henderson, 145 F. 316, page 320 (4th Cir. 1906), cert. denied, 206 U.S. 563, 27 S.Ct. 795, 51 L.Ed. 1190 (1907) (where land belonging to the bankrupt was sold, and a dispute arose between bidders as to a contract they had regarding the bidding on it, the court said that the contract had nothing to do with the bankrupt's property, and "we fail to understand the theory on which this proceeding was instituted."). See also In re Hollins, 229 F. 349 (2d Cir.), cert. denied, 241 U.S. 661, 36 S.Ct. 448, 60 L.Ed. 1226 (1916) and Brumby v. Jones, 141 F. 318 (5th Cir. 1905); In re Adolf Gobel, Inc., 80 F.2d 849 (2d Cir. 1936)

It is perfectly clear that if this dispute did not involve the bankrupt or its property even consent of the parties could not confer jurisdiction upon the court. Nor can it be said that a default by the Petitioner would do so.

The burden is upon the Receiver to show that the court has jurisdiction. If he did not sustain that burden the case would properly have been dismissed on the Referee's own motion, and it can be reversed on appeal on that ground. See Maule Industries v. Gerstel, 232 F.2d 294 (5th Cir. 1956), where although the case went by default the court dismissed the action, finding that the petition did not show that the bankruptcy court had summary jurisdiction; and First National Bank of Negaunee v. Fox, 111 F.2d 810 (6th Cir. 1940), to the same effect. See also, In re Cadillac Brewing Co., 102 F.2d 369 (6th Cir. 1939) and In re Retail Stores Delivery Corp., 5 F.Supp. 892 (S. D.N.Y.1933).

Thus the heart of this jurisdictional dispute is laid bare. The question really is whether the court lost subject matter jurisdiction for the purpose of deciding disputes over the trade names and franchise agreements after the property was sold to the Buyer and the sale was confirmed. If it did, then consent will not confer jurisdiction, and the injunction must be vacated.

Where the property in question has been sold it is said that "once the sale is confirmed and an unconditional transfer executed * * * the jurisdiction of the bankruptcy court over the property is generally said to terminate and does not follow it * * * in order to determine claims, impose conditions or limitations, or declare a trust upon the property." 4 Collier on Bankruptcy, 14th ed., para. 70.98, page 1879. This position is well supported by the cases. See e. g. Nixon v. Michaels, 38 F.2d 420 (8th Cir. 1930) (once a fund had been paid out to a claimant further disputes over it were outside the interest and jurisdiction of the court.) ; Henrie v. Henderson, 145 F. 316 (4th Cir. 1906), cert. denied, 206 U.S. 563, 27 S.Ct. 795, 51 L.Ed. 1190 (1907) (once certain lands had been sold and the sale was confirmed, the court stated that disputes as to the land were simply not of concern to the bankrupt estate, and there was no jurisdiction.) ; Reconstruction Finance Corp. v. Jack-

sonville Blow Pipe Co., 143 F.Supp. 601 (N.D.Fla.1956), affirmed, 244 F.2d 394 (5th Cir. 1957) (The District and Circuit Courts held that after sale of the property the court could take jurisdiction to decide the rights of an adverse claimant therein and to enjoin a state court action. But, in this case the claimant had been before the bankruptcy court prior to sale and the sale had been free of liens. Naturally, the claimant was not to be allowed to circumvent the court in this way. Also the case appealed to the courts' general power to protect their judgments. On appeal a dissenting judge felt that even this was going too far.) ; In re Maryland Coal Co., 36 F. Supp. 142 (N.D.W.Va.1941) (After sale of the property a sheriff was precluded from enforcing a tax lien against the property which was sold. But, here again, the sheriff had filed his claim with the court and it had been barred by order of the court. This obvious attempt to evade the court's order could not, and would not, be allowed.) ; and In re Wesley Corp., 18 F.Supp. 347 (E.D.Ky.1937) (after the property had been sold a creditor who had not been notified and who was not included on the bankrupt's schedules, asked the court to give him the property. The court said that it simply had no jurisdiction over the matter once the property was sold. The bankruptcy court would not follow property into the hands of purchasers for the purpose of settling equities in it. The rule of caveat emptor applied, and further disputes were between the buyer and the creditor. It was no longer property of the bankrupt, and the court had no further interest in it.)

Another important case in this area, and one on which both parties attempt to rely, is, In re Oak Park Cleaners & Dyers, 125 F.2d 420 (7th Cir. 1942). In Oak Park the company became a bankrupt. Haines was the president of the company and operated it for the trustee until April 19, 1941. Sale of the company's assets was set for April 21, 1941. Shortly before the date of sale Haines rented a piece of property and set up an-

other cleaning establishment about a block and a half away from the site of the first business. He opened his doors on the very day set for the sale, and had induced all of the bankrupt's employees to come over to his new establishment. His obvious intent was to usurp the bankrupt's good will. This had the effect of greatly lowering the value of the bankrupt's saleable assets. The court felt that this action by Haines was somewhat contemptuous, and enjoined him from engaging in a business in such a way as to interfere with the business of the bankrupt. Subsequently, the bankrupt's business was sold at a reasonable price, and that sale was confirmed. Haines then applied to have the injunction vacated, the court refused, and he appealed. The appellate court felt that the bankruptcy court could not extend its process that far, and said, 125 F.2d page 422:

"We do not think the bankruptcy court had any such power. It had the power to enjoin anyone from interfering with the jurisdiction of the court in the orderly administration of the bankrupt estate and its attempt to dispose of the assets of the bankrupt; but when the assets had been sold and delivered to the purchaser, the court, in the absence of some validly assumed obligation to do so, owed no duty to protect the purchaser thereafter.

"The injunction should not have extended beyond the necessities of the case. When the assets were sold and delivered to the purchaser, the bankrupt had no business left to be interfered with. The court's right to operate the business could no longer be interfered with. The bankrupt's business and assets were gone. The injunctive process of the court could go no further than the court's duties and its necessities in the lawful exercise of its powers as a bankruptcy court required. When the property was sold and delivered to the purchaser, the bankruptcy court

had no power or authority to extend its protection beyond the sale and delivery of the property."

It will be noted that for the most part this decision supports the position of the Petitioner in the case now before the court. However, the Receiver emphasizes the statement, "in the absence of some validly assumed obligation to do so." While the court did not indicate what it was thinking of when it made that statement, it may well have had certain of the earlier cases in mind. Thus, in Mutual Life Ins. Co. v. Menin, 115 F.2d 975 (2d Cir. 1940), cert. denied, 313 U.S. 578, 61 S.Ct. 1096, 85 L.Ed. 1536 (1941) the debtor's name and good will were sold to a certain buyer. The court found that where this was done it was also proper to permanently enjoin the debtor corporation as well as its officers and employees from entering into a business using the name in such a way as to confuse the public, and usurp the good will of the debtor. This injunction would, of course, continue beyond the time of the sale. See also, S. F. Myers Co. v. Tuttle, 183 F. 235 (S.D.N.Y.1910). But note especially the fact that in all of these cases the parties involved were intimately concerned and identified with the debtor, and that tends to account for the court's need to exercise jurisdiction over them in the first instance, even before sale. Therefore, it seems that Oak Park does not help the Receiver in the matter now before this Court. Not only was its express holding to the contrary, but the probable meaning of the ambiguous statement relied upon by the Receiver can be interpreted in a manner which is not opposed to the Petitioner's position.

However, the Receiver asserts the fact that the Trade Names of the Debtor were and will be of great value to the estate, and that their value will be lessened if the Petitioner and others are allowed to use them with impunity. But, in the first place, that dire result will not occur. The names can still be protected in an ordinary plenary action in the courts even if this court does not have jurisdiction. Furthermore, this same argument was

nicely answered by the court in In re Krull, 295 F. 520 (E.D.N.Y.1923). There the bankrupts held an unexpired lease which was sold by the trustee to certain third parties. After that time assignees of the lessors sought to oust assignees of the buyers apparently on grounds that the assignment of the lease was invalid in the first instance. The lessees asked the bankrupcty court to enjoin the lessors from proceeding, and the trustee in bankruptcy appeared to argue that if the lessors should succeed in ousting the lessees the estate of the bankrupt would be damaged. The court said, 295 F. at page 521:

> "In the instant case, the trustee has sold the interest of the bankrupts in the unexpired term of a lease. Presumably the purchaser acquired certain rights as a result of his purchase. Those rights he has assigned to the present applicants. The bankruptcy court has no further control over them, and if the title of the applicants is attacked in another tribunal, this court has no jurisdiction to prevent that tribunal from proceeding to an orderly determination of the rights of the parties. The trustee in bankruptcy has appeared, and states that, if the assignment of the lease is invalid, he will be called upon to return the moneys received as a result of the sale of the assets. It is not clear to the court why such a result follows, if there was indeed a sale of all the trustee's right, title, and interest; but, even if this be true, it cannot give the court the right to assert a power which it lacks."

Thus, the mere fact that there may be some repercussions on the bankrupt estate will not confer jurisdiction upon the court. And, of course, in Krull, as here, the bankrupt estate would have been affected because of its contractual agreements with the Buyer—be they expressed or implied.

But, the Receiver also contends that when he entered into the agreement to protect the Buyer's use of the trade names four times he reserved a valuable property right for the bankrupt estate, and that right gives jurisdiction in this case. I think his reasoning on this point is somewhat faulty. First, what he has really done is assumed a contractual duty to protect the Buyer's interest for a while. If, assuming the duty to conduct someone else's litigation for him is a valuable property right, why is it that the Receiver did not reserve the "right" to do it as often as necessary rather than only four times? Surely the Buyer would have been happy to let him do so. Even if this court adopts a liberal attitude about what is and what is not property, it would be difficult to denominate this burden, which was imposed upon the Receiver, "property" in any ordinary legal sense. Second, no one is asserting a claim against the Receiver's right to bring an action—no one denies that right. This case does not really involve that right. This case only involves the trade names and the franchise agreements, which were sold to the Buyer.

Once the trade names and franchise agreements were sold to the Buyer, and that sale was confirmed by the Bankruptcy Court, the title to and possession of the property involved passed to the Buyer. This left the court without subject matter jurisdiction, and without such jurisdiction it could not proceed to adjudicate disputes which later arose over the franchise agreements. The mere agreement of the Receiver to protect the Buyer against four unauthorized users could not confer jurisdiction upon the court. Nor could consent, including consent implied from a default, confer this basic jurisdiction upon the court.

The application of the Receiver (September 5, 1963) should be dismissed for lack of jurisdiction.

Counsel for the Petitioner is directed to prepare, serve and lodge a formal order pursuant to Rule 7 of the Rules of this court.