Matter of **AMERICAN BUSLINES, Inc.,** Debtor (On Motion of Trustee in Relation to Proceeding Before National Labor Relations Board).

No. B–15–54.

United States District Court
D. Nebraska.

June 4, 1957.

---

3. D.C.E.D.Pa., 129 F.Supp. 117, 120.

Richard W. Smith (trustee) and J. Taylor Greer, Woods, Aitken & Aitken, Lincoln, Neb., for trustee.

Harry Irwig, Kansas City, Mo., and Stephen Leonard, Associate General Counsel, Washington, D. C., for National Labor Relations Board.

Robert B. Crosby, Crosby, Pansing & Guenzel, Lincoln, Neb., and George E. Bodle, Bodle & Fogel, Los Angeles, Cal., for Brotherhood of Railroad Trainmen.

DELEHANT, District Judge (Retired, serving by assignment).

The ruling announced is made in the course of a proceeding for the corporate reorganization of the debtor under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. It arises in this manner. On March 18, 1957, the trustee filed a "Motion for Instructions, and for Clarification of the Court's Stay Order of February 10, 1954, as it Relates to Proceedings Before the National Labor Relations Board; and for Order Directing That Cause be Shown Why the Proceeding of Brotherhood of Railroad Trainmen Before the National Labor Relations Board Should Not be Stayed in Conformity to Said Order Herein of February 10, 1954", (filing 900), hereinafter referred to as "the motion". A copy of the body (with the intentional deletion of certain patently argumentative language), and the prayer of the motion is set out in a footnote.[1] That is done because the

---

[1]. The body of the Motion referred to (less conclusionary and argumentative material) follows:

"Richard W. Smith, the duly appointed, qualified and acting Trustee in the above-entitled matter, respectfully states and shows to the Court as follows:

"1. That on November 28, 1956, the Brotherhood of Railroad Trainmen, 1500 Standard Building, Cleveland, Ohio, filed a representation petition before the National Labor Relations Board, Seventeenth Region, Kansas City, Missouri, alleging that the Brotherhood of Railroad Trainmen represented 30% or more of the motor coach operators, station employees and maintenance employees of 'American Buslines, Inc.'

"2. The purpose of such representation petition was to set in motion procedures of the National Labor Relations Board leading to an election with the ostensible object of endeavoring to ascertain whether the Brotherhood of Railroad Trainmen was, in fact and law, entitled to be the bargaining representative for those employed by the Debtor in some particular bargaining unit.

"3. For some time prior to the inception of reorganization proceedings on February 10, 1954, American Buslines, Inc. had been advised that two different Divisions (Nos. 1467 and 1468) of Amalgamated Association of Street, Electric

copied language discloses with adequate clarity the setting in which the issues are made and the prayer of the motion, as also because it fairly reflects the facts

Railway and Motor Coach employees of America represented the motor coach operators, station employees and maintenance employees in the 'Burlington Division' of American Buslines, Inc., and had been so certified by the National Labor Relations Board under date of May 15, 1951; and also that Division No. 1133 of the Amalgamated Union represented certain other employees in the 'American Division' of American Buslines, Inc.

"4. After February 10, 1954, the same divisions of such union continued their ostensible and respective representation, and a new labor contract was entered into with approval of the reorganization court in October, 1954, which contract expired by its own terms on February 9, 1957.

"5. Yet another union, namely, 'United Motor Bus Employees of America Labor Union', 3128 King Street, Omaha, Nebraska, claimed to represent all coach operators, maintenance employees, terminal employees and office employees of the Debtor and its subsidiaries (excepting supervisory employees), said union making such claim on December 10, 1956.

"6. Following the filing of such representation petition with the National Labor Relations Board by the Brotherhood of Railroad Trainmen, the Board's Regional office at Kansas City, Missouri, set the matter for hearing on February 4, 1957 at Lincoln, Nebraska.

"7. On that date the Trustee, on advice of counsel, filed a Motion as to Stay of Representation Proceedings because of the fact that this Court's Order of February 10, 1954 approving the Petition for Reorganization, had clearly set out the exclusive jurisdiction of the reorganization court over the Debtor and had stayed all proceedings of any kind before other tribunals, such Order providing, at paragraph 20 thereof, the following:

" '20. That until final decree or the further order of this court, all creditors and stockholders, and all sheriffs, marshals and other officers, and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity against said debtor, said trustee or said additional trustee, in any court, or from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon any property owned by or in the possession of the said debtor, or said trustee or said additional trustee, and from doing any act or things whatsoever to interfere with the possession or management by said debtor, said trustee, or said additional trustee of the property and assets of the within estate, or in any way interfere with said trustee or said additional trustee in the discharge of his duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over said debtor, said trustee and said additional trustee and their respective properties; and all persons, firms or corporations owning any lands or buildings occupied by said debtor or said trustee or wherein is contained any property of the within estate be, and they hereby are, jointly and severally, stayed, pending the further order of this court, from removing or interfering with any such property.'

"8. Upon receipt of such Motion as to Stay of Representation Proceedings, the Hearing Officer for the Board, Mr. William Guerin, adjourned such hearing indefinitely; and he and the Trustee and Mr. William Park of the Brotherhood of Railroad Trainmen and Mr. Fred Powers, an international representative of the Amalgamated Union, and Mr. Harry Henatsch, representing the United Motor Bus Union, requested, and the Court allowed, an informal conference with the Court on this matter. As a consequence of this conference, the Court set aside a date and time of hearing; namely, 10:00 a. m. March 8, 1957, which date was agreed upon by the parties and upon which date would be heard a proposed application to be made to this Court by the Brotherhood of Railroad Trainmen for a clarification of this Court's Order dated February 10, 1954 and for a determination whether the Court would authorize or permit the representation proceedings before the Board to continue, and to authorize and permit the Trustee to appear and participate therein.

"9. The Trustee also agreed that, upon timely receipt of such application of the Brotherhood of Railroad Trainmen, the Trustee would cause to be sent out such notice of such hearing as the Court might direct. However, no application was ever received by the Trustee and the Brotherhood of Railroad Trainmen have

underlying the motion, which are not materially in dispute and may be considered to be accepted by the court. Pursuant to the motion and on the date of its filing, the court made and entered an order (filing 901) requiring Brotherhood of Railroad Trainmen, hereinafter referred to as "the Brotherhood", its officers, attorneys and agents to stay and discontinue the prosecution of the proceeding before National Labor Relations Board, hereinafter identified as "the Board" (being Case No. 17–RC–2432 before the Board), until the further order of the court, fixing a date for hearing upon the motion and requiring the Brotherhood to show cause at the hearing why the stay thus temporarily granted should not remain in effect during the remainder of the pendency of this reorganization proceeding, or until the further order of the court. Service of the order was timely made upon the Brotherhood and upon the Regional Director, seventeenth Region of the Board, as well as upon certain labor organizations identified in the motion as probably competitive with the Brotherhood, all as directed in the order. Hearing was had upon the motion and order to show cause, at which the Brotherhood and the Board were represented by counsel and resisted the further stay of the proceeding before the Board. The trustee and his counsel also appeared and generally supported the persistence of the stay. Briefs of counsel have been received and considered.

never re-contacted the Trustee, or, to the knowledge of the Trustee, this Court with respect to same.

"10. Under date of March 4, 1957, the Regional Director of the Seventeenth Region of the National Labor Relations Board at Kansas City, Missouri, wrote the Court stating that he had been directed by the General Counsel of the National Labor Relations Board to re-open the representation proceedings and set a new hearing date on the ground that the proceedings of the National Labor Relations Board are not affected by proceedings in Bankruptcy.

"11. The Trustee does not find the law to be clear as to whether the Brotherhood of Railroad Trainmen may invoke the jurisdiction of the National Labor Relations Board as it has done while the Debtor is under exclusive jurisdiction of this Court, or as to whether the National Labor Relations Board may continue to carry on proceedings as proposed by it while the Debtor is under exclusive jurisdiction of this Court; and, therefore, the Trustee has filed this Motion for Instructions and Clarification of the Court's Stay Order. * * *

* * * * *

"12. The Trustee, as an arm of this Court, understands this Court to have exclusive jurisdiction over the Debtor and over the Trustee, and, in the interests of orderly procedure, and in the interests of having a clear record as to the scope of authority and duties of the Trustee, and as to the scope of jurisdiction of the National Labor Relations Board as it may impinge upon the jurisdiction of this Court, the Trustee is of opinion that this Motion for Instructions is necessary. The Trustee points out, in this connection, that the reorganization proceeding has now reached the stage where a proposed Plan has been presented, the hearing had thereon, the objections, if any, are identified and are generally without apparent material effect on the proposed Plan, the Court has found the proposed Plan 'worthy of consideration' and has submitted same to the Securities & Exchange Commission, which agency has stated it does not desire to file any advisory report; and the proposed Plan is now under submission for approval by the Court.

"Further, it is possible, if not likely, that the representation proceedings, if allowed to proceed before the National Labor Relations Board, may consume many months and may pose a problem which will harass the reorganization proceedings; hence, the Court should review whether it desires to yield in part its exclusive jurisdiction over the Debtor.

"Wherefore, the Trustee prays that this Court make and enter an order setting this Motion for hearing, and directing that at such hearing the National Labor Relations Board and the Brotherhood of Railroad Trainmen show cause thereat why the representation hearing before the National Labor Relations Board (Case No. 17–RC–2432) should not be stayed during the reorganization proceedings of the Debtor; and that pending such a hearing thereon, the Brotherhood of Railroad Trainmen be ordered to stay and discontinue the prosecution of said proceedings before the National Labor Relations Board."

■ Upon due consideration the court has concluded, 1) that its stay order of February 10, 1954, whose language is fairly disclosed in footnote 1, was not made with express reference to, or in conscious anticipation of, Case No. 17–RC–2432 before the Board or any like proceeding; 2) that the court does not possess the power or authority to command or require the further stay of the prosecution of that proceeding; 3) that, if it did possess such power, a proper case has not been made out for its affirmative exercise; and 4) that an order should be made and given discharging and dissolving the order to show cause heretofore made and given, terminating the stay therein granted, and directing the trustee not to resist the position of the Brotherhood, or otherwise to participate as a party, in Case No. 17–RC–2432 before the Board, unless, upon due application and showing, the court shall hereinafter otherwise direct. The reasons prompting the court to the opinion just announced will now be mentioned without unnecessary or extended discussion.

The point need not be labored that the stay order of February 10, 1954, was not made with a conscious view to Case No. 17–RC–2432 or any like proceeding. When it was made, immediately upon the institution of this proceeding, a collectively bargained labor contract with many of the debtor's employees was in effect. It was shortly cancelled by an order of the court. But a new agreement was promptly negotiated and executed, which the court approved. The employees of the debtor affected by those agreements then were, and, so far as the court is aware, still are represented for bargaining purposes by various labor organizations. Until comparatively recently, the court has not been advised of any controversy or question either upon the appropriate constitution of a bargaining unit, or of bargaining units, among the debtor's employees, or upon the right of any particular labor organization or organizations to represent such unit or units, once defined and determined. The

matters pending before the Board have, therefore, arisen long after the entry of the order of February 10, 1954, and had no part in its prompting.

■ Whether the order, without formal design, is, by virtue of its purposefully general and broad language, adequate in terms to include an injunctive decree against the institution or prosecution of such a proceeding before the Board is quite another question. But, after careful examination of the order and of its several clauses, considered both separately and in their entirety, the court is of the opinion that that query has to be answered negatively. It would clearly appear that, if the order has any possible restraining impact upon the proceeding before the Board, such impact would have to arise out of the following language wherein restraint is imposed upon:

"* * * doing any act or things whatsoever to interfere with the possession or management by the debtor, said trustee, or said additional trustee of the property and assets of the within estate, or in any way interfere with said trustee or said additional trustee, in the discharge of his duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over said debtor, said trustee and said additional trustee and their respective properties."

The language of the order which precedes, and of that which follows, the material just quoted has reference to several specific activities, none of which, as the court believes, may be held to comprehend the proceeding pending before the Board. Nor, in the court's understanding of it, vide infra, is that proceeding one which does, or will, either "interfere with the possession or management by the debtor, said trustee, or said additional trustee of the property and assets of the * * * estate", or "interfere with said trustee or additional trustee in the discharge of his duties", or "interfere * * * with the exclu-

sive jurisdiction of this court over said debtor, said trustee and said additional trustee and their respective properties." What is chiefly sought in the proceeding before the Board is a) the determination and prescription of an appropriate bargaining unit among employees of the debtor, and of the trustee and additional trustee as its managers in this action, and b) the choice by the persons within that unit of their bargaining representative. Those problems are the business of the affected employees, not of the debtor or its trustee or additional trustee. Only remotely and indirectly, if at all, will the debtor or the trustee or additional trustee be affected by the action taken before or by the Board. The court is not so naive as to assert that, as employers, the debtor and its trustee and additional trustee can have no possible emotional concern about the course of that action. They may easily, and with abundant reason, prefer to deal with one bargaining unit rather than another or to negotiate with one bargaining agency rather than another. But there is not much they may properly or prudently do about those choices, which are to be exercised by the employees, not by the employer. Once the unit is defined and the bargaining agency determined, management will necessarily deal with it, presumably in the mutual interest of both employer and employees, but in some measure perhaps in an adversary way. That being true, it does not lie with management either to control, to veto, or altogether to intercept the free selection by its employees of their representatives at the bargaining table. So far, no more is involved. And that selection seems clearly not to be within the reach of the language quoted from the order of February 10, 1954.

Most directly argued by counsel is the question whether the court is vested with the power or authority to stay throughout this proceeding further procedure in Case No. 17–RC–2432 before the Board. The court's conclusion, already announced, that such power or authority does not exist, appears to be inescapable. In support of that view a very brief reference to some of the pertinent statutes and judicial rulings is appropriate.

■ The engagement of the debtor in interstate commerce, before, and at the time of, the institution of this proceeding, and now is admitted. It could not be questioned. In its labor relations (with possible but presently insignificant exceptions) the debtor and its trustee and additional trustee are, therefore, within the reach of the National Labor Relations Act, as amended. Title 29 U.S.C.A. § 151 et seq. With due limitation to the present context, that Act erects the National Labor Relations Board, Title 29 U.S.C.A. § 153; provides for its organization and procedures and clothes it with authority to make rules and regulations for the administration of the Act, Title 29 U.S.C.A. §§ 154, 155 and 156; declares and provides for the right of affected employees "to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing," along with other important rights, Title 29 U.S.C.A. § 157; and vests the Board with jurisdiction over proceedings involving the determination of appropriate bargaining units and the choice and certification of bargaining representatives for such units. Title 29 U.S.C.A. § 159. Not now involved, yet of significance in any understanding of the scope of the Board's jurisdiction, are further provisions of the Act, defining certain acts or conduct [2], as "unfair labor practices", Title 29 U.S.C.A. § 158; committing to the Board jurisdiction over pro-

---

2. Among which, incidentally, but with direct present significance, is an employer's refusal "to bargain collectively with the representatives of his employees, subject to the provisions of" Title 29 U.S.C.A. § 159, vide supra. It follows that such refusal may constitute a ground for relief in a proceeding brought before the Board under the jurisdictional grant of Title 29 U.S.C.A. § 160, vide infra.

ceedings charging the engagement in such practices, Title 29 U.S.C.A. § 160; and conferring on the Board wide investigatory authority in the field of labor relations in areas affecting interstate commerce. Title 29 U.S.C.A. § 161.

Of the foregoing sections of the statute, section 159 has special present pertinence. In a setting such as that which is involved in Case No. 17–RC–2432, it provides for the filing "by an employee or group of employees or any individual or labor organization acting in their behalf" of a petition asserting that, on one or another of certain bases defined in the section, a designated labor organization desires to, and of right should, be recognized as bargaining representative of a designated unit of employees of a specified employer, who or which declines to grant such representation; investigation of such petition, and hearing upon it, by representatives of the Board; the Board's determination whether a question is involved of representation affecting interstate commerce; the holding, if such question be found to exist, of a representation election by secret ballot of the employees concerned under the Board's supervision; and the Board's determination and certification of the results of such election. And, at the outset of the section it is provided that:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment", with a presently immaterial proviso.

By the legislation cited, the Congress, within the area of labor relations in or affecting interstate commerce, has established the Board and conferred upon it primary jurisdiction over controversies and proceedings involving many subjects but including, especially

for the purposes of the present ruling, the determination and definition of an appropriate bargaining unit and the adjudication of the status of an identified agency as the duly chosen bargaining representative of the employees within such unit. That function in its entirety is committed in the first instance to the Board. The justification for that legislative bestowal of the jurisdiction need not now be too exhaustively explored or declared. What substantially matters here is the historical fact of the bestowal. And it exists. Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L. Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; La Crosse Telephone Corporation v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463; Bethlehem Steel Company v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; International Union of Operating Engineers, A. F. of L. Local No. 148 v. International Union of Operating Engineers, A. F. of L. Local No. 2, 8 Cir., 173 F.2d 557; Pittsburgh Plate Glass Company v. National Labor Relations Board, 8 Cir., 113 F.2d 698; Amazon Cotton Mill Company v. Textile Workers Union of America, 4 Cir., 167 F.2d 183; Madden v. Brotherhood and Union of Transit Employees of Baltimore, 4 Cir., 147 F.2d 439, 158 A.L.R. 1330.

Thus, state courts and state administrative boards are barred from intrusion into the field of representational inquiry. Guss v. Utah Labor Relations Board, supra; La Crosse Telephone Corporation v. Wisconsin Employment Relations Board, supra; Weber v. Anheuser-Busch, Inc., supra; Bethlehem Steel Company v. New York State Labor Relations Board, supra; Linde Air Products Company v. Johnson, D.C.Minn., 77 F.Supp. 656. It is true that, in part, the denial of such jurisdiction to state tribunals, whether judicial or administrative, has been posed, with eventual finality, upon the

884

ground that, with full constitutional warrant and under the commerce clause of the constitution, the congress has exclusively occupied for the national government the field of labor relations in, or affecting, interstate commerce. Guss v. Utah Labor Relations Board, supra; Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, supra. But it has also been put upon the basis of the exclusiveness with which jurisdiction in the premises has been committed to the Board. And upon that ground, like exclusion of the jurisdiction over the subject in the federal courts has been declared. International Union of Operating Engineers, A. F. of L. Local No. 148 v. International Union of Operating Engineers, A. F. of L., Local No. 2, supra; Pittsburgh Plate Glass Company v. National Labor Relations Board, supra; Amazon Cotton Mill Company v. Textile Workers Union of America, supra; Madden v. Brotherhood and Union of Transit Employees of Baltimore, supra; Amalgamated Utility Workers v. Consolidated Edison Company of New York, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Fitzgerald v. Douds, 2 Cir., 167 F.2d 714. The essential point of the question is thus clearly stated by Mr. Justice Jackson in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, supra [346 U.S. 485, 74 S.Ct. 165]:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid

these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. Indeed, Pennsylvania passed a statute the same year as its labor relations Act reciting abuses of the injunction in labor litigations attributable more to procedure and usage than to substantive rules. A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so. Cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. And the reasons for excluding state administrative bodies from assuming control of matters expressly placed within the competence of the federal Board also exclude state courts from like action. Cf. Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234."

██ By way of illustration, the federal courts within their equity jurisdiction are without power to enjoin the submission to the Board of an issue within its jurisdiction under the Act. Myers v. Bethlehem Shipbuilding Corporation, supra. Nor may such courts in the first instance assume the exercise of a jurisdiction entrusted exclusively to the Board, such as the definition of an appropriate bargaining unit or the determination of the right of an applicant to act as a bargaining representative for a unit's employees. Fur Workers Union, Local No. 72 v. Fur Workers Union No. 21238, 70 App.D.C. 122, 105 F.2d 1; Norris, Inc., v. National Labor Relations Board, 85 U.S.App.D.C. 106, 177 F.2d 26; Amalgamated Association of Street, Electric Railway and Motor Coach Employees

of America v. Dixie Motor Coach Corporation, 8 Cir., 170 F.2d 902; Amazon Cotton Mill Company v. Textile Workers Union of America, supra.

It may be observed in passing that, within the limits of the Act, jurisdiction to entertain enforcement proceedings at the behest of the Board and proceedings to review its rulings, has been conferred upon the courts of appeals. Beyond mere recognition, that grant of authority need not be discussed here, for the instant recourse to this court in nowise involves it.

Thus far in this announcement, attention has been given to the question of the jurisdiction of the United States Courts in the area, quite apart from the impact of their Bankruptcy jurisdiction. It has been suggested to the court, however, that it ought to claim and exercise jurisdiction to intercept the proceeding before the Board by virtue of the pendency here of this main reorganization action and as a means of protecting its jurisdiction and exclusive control over the debtor, its trustees and the property of the trust. And respectful consideration has been given to that position. However, it is not regarded as tenable. It has been held that the right of the Board to exercise its jurisdiction and thereupon, by petition to an appropriate Court of Appeals, to seek a decree of enforcement may not be thwarted by reason of the Board's failure to obtain permission to proceed from a state court by which a receiver had been appointed for an employer even before the approval of the National Labor Relations Act. National Labor Relations Board v. Bachelder, 7 Cir., 120 F.2d 574. And bankruptcy and reorganization proceedings in federal courts have been held inadequate to vest the courts in which they are pending with authority to intercept or control the Board's exercise of its jurisdiction to administer the Act in a number of particulars. Nathanson v. National Labor Relations Board, 1 Cir., 194 F.2d 248 (see also Nathanson v. National Labor Relations Board, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23, reversing the court of appeals' ruling upon a matter

of detail but sustaining its position in the respect for which it is presently cited); Bakery Sales Drivers Local Union No. 33 v. Wagshal, 333 U.S. 437, 68 S.Ct. 630, 92 L.Ed. 792; National Labor Relations Board v. Coal Creek Coal Company, 10 Cir., 204 F.2d 579; National Labor Relations Board v. Baldwin Locomotive Works, 3 Cir., 128 F.2d 39. In the case last cited, the court, speaking through Judge Jones, said in 128 F.2d at page 44:

"The jurisdiction of a United States District Court in bankruptcy does not embrace the power to treat with a debtor's unfair labor practices which affect commerce. Nor is such a court's leave to the Board to proceed in appropriate manner required. By Section 10(a) of the National Labor Relations Act the Board is expressly empowered to prevent any person from engaging in any unfair labor practices affecting commerce; and that power is exclusive in the Board and unaffected 'by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.' The Act moreover explicitly removes the possibility of any restraint upon the Board's power which might be thought to arise where the employer's properties and business are operated under an order of a District Court in a reorganization proceeding in bankruptcy."

See also In re Long Island Railroad Company, D.C.N.Y., 111 F.Supp. 629.

It is observed at this point without further discussion that this court regards as instructive on the matter before it, the conclusions of the courts whose opinions have just been cited notwithstanding the circumstance that in some part, they involve a) the power of a court under Section 77B rather than under Chapter X, and b) factual settings in which, in point of the time of institution, the Board proceedings have antedated the Bankruptcy cases. The court thinks that the controlling factor to be gathered from the authorities is the utter want of power

rather than the matter of the time of the tardy onset of an otherwise maintainable jurisdiction. In the latter behalf it need only be observed that if the power invoked exists and arises under Title 11 U.S.C.A. § 516, it extends alike to the prevention of the institution of suits after the commencement of the Chapter X proceeding and to the suspension of the continuance of cases that were pending at the time of such commencement.

The court has respectfully considered the sections of the Bankruptcy Act upon which any authority which it might possess to restrain resort to the Board would apparently have to rest; and has concluded that neither of them is adequate to warrant such restraint. That appears clearly to be true of Title 11 U.S.C.A. § 29 which is applicable to general Bankruptcy jurisdiction but has obvious ministry in ordinary bankruptcy cases. It provides for a mandatory temporary stay, and allows a further stay, of:

> "A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition by or against him."

The recollection of that language sufficiently discloses its present inapplicability. Title 11 U.S.C.A. § 516 has special reference to Chapter X proceedings. By it provision is made that:

> "Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties in this chapter conferred and imposed upon him and the court—
>
> \* \* \* \* \* \*
>
> "(4) in addition to the relief provided by section 29 of this title, enjoin or stay until final decree the commencement or continuation of *a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor.*" (Emphasis added.)

The authority so defined is limited to a) "a suit against the debtor or its trustee," or b) "any act or proceeding to enforce a lien upon the property of the debtor." Case No. 17–RC–2432 before the Board is neither. It does not even remotely involve a lien upon the property of the debtor. Nor may it rationally be regarded as a suit against the debtor or its trustee. It has to do with an instrumentality by which rights, not of the debtor (or of its trustee) but of its employees, shall be asserted or maintained. So understood, it involves, too, a purely preliminary or interlocutory matter, one of which the results may never have any impact, either direct or oblique, upon the trust under the court's control, or the business of that trust.

Before leaving the problem of jurisdiction attention should be accorded to another persuasive barrier to its existence. Among the "definitions" preliminary to the major provisions of the National Labor Relations Act itself, is that of "person" in Title 29 U.S.C.A. § 152. It follows:

> "When used in this subchapter—
>
> "(1) *The term 'person' includes* one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, *trustees, trustees in bankruptcy, or receivers*". (Emphasis added.)

The legislative purpose to include within the employers affected by the Act judicially designated trustees or receivers, and even by express mention, trustees in bankruptcy, is thereby made unmistakably clear. The existence or intervention of bankruptcy, or corporate reorganization of an employer is not allowed to deprive his or its employees of the rights defined and assured to them by the Act or to impair, or, as the court is persuaded, to alter the manner of or the forum for, the assertion and vindication of those rights.

The court's primary conclusion may, therefore, be succinctly reflected by the simple declaration, "non possumus". It should not undertake further to suspend the prosecution of the case before the Board, because it is without the authority effectively to command such suspension.

But it is further made clear that, if, in its opinion, the jurisdiction to the exercise of which it has been invited actually existed, it would, nevertheless, hold that a case has not been made out requiring or even warranting its affirmative exercise. Two considerations conspire to lead the court to that conclusion. They will only be mentioned, and very briefly.

The first is the tenuous character of any power which the court might hold itself to possess. Upon that point the foregoing discussion is relevant. But if the court be mistaken in its view that it has not the jurisdiction further to prevent the prosecution of the case before the Board, the mistake would necessarily be affirmed upon narrow and dubious grounds. And a court should much less readily claim and exercise a doubtful power than it should administer and enforce an obvious one.

Secondly, the court is wholly unconvinced that the proceeding before the Board, either necessarily or with reasonable probability, involves the threat of any injury to the debtor or the trustee or to the trust itself. This is said in full awareness of the highly sensitive position of the trust in this critical interval of the reorganization proceeding. It is undoubtedly an inauspicious time to introduce into the affairs of the debtor any unnecessary element of controversy or industrial or economic instability. But such introduction seems not really to be threatened, much less persuasively foreshadowed, by the Board's case. Even if that case were concerned with an initial organizational campaign among the debtor's employees, any threat from it of controversy or instability involving the trust would be regarded as remote. And it does not involve the attempted organization of the hitherto unorganized employees of an enterprise. The debtor's operating employees are already largely, if not entirely, organized. What are at stake in the Board's case are what labor organization or organizations shall hereafter represent them in bargaining with their employer, and the composition of the unit or units for which such bargaining shall eventually proceed. While it is recognized that in practical operations the fact may be otherwise, in theory at least, that problem is not the concern of the employer. It is a matter to be resolved by the affected employees themselves under the guidance of, and subject to the eventual certification of the result by, the Board. Whoever the bargaining representatives may ultimately be, the trustee and additional trustee will be expected to treat with them as the representatives of the employees in the determined unit. It may not be assumed at the present time that those negotiations will either result in injury to the trust or even be rendered more onerous by the yet undeterminable identity of the employees' negotiators. That identity may or may not be altered in consequence of the action before the Board. Such action will not affect the obligation of the trust to bargain with appropriate bargaining representatives of its employees but will determine merely who those representatives shall be and for precisely whom they shall bargain. In the situation which exists and with which the court has to deal, the conclusion, or even the apprehension, of practical peril to the trust or to the prime reorganizational objective of this main proceeding appears to the court to be quite unrealistic and undemonstrated.

Accordingly, the order already foreshadowed is being made and given concurrently with the entry of this memorandum.