**In the Matter of the SCRANTON CORPO-
RATION, Debtor.**

**No. 11338.**

United States District Court
M. D. Pennsylvania.

Oct. 23, 1964.

———◆———

Nogi, O'Malley & Harris, Scranton,
Pa., for trustees.

Bernard J. Brown, U. S. Atty., Scran-
ton, Pa., for United States Internal
Revenue Service.

SHERIDAN, Chief Judge.

This is a petition by the trustees of The
Scranton Corporation (Scranton), debtor
in reorganization proceedings under
Chapter X of the Bankruptcy Act, for an
order to enjoin the Tax Court of the
United States from proceeding upon cer-
tain petitions of Storm-Vulcan, Inc.
(Storm-Vulcan) and Scranton Factors
Corporation (Scranton Factors), wholly
owned subsidiaries of Scranton, and to
have this court assert *its jurisdiction*
over the matters pending before the Tax
Court.

On April 3, 1959, Scranton filed a peti-
tion for reorganization under Chapter X

of the Bankruptcy Act. The duly appointed trustees filed consolidated income tax returns for the years 1958 and 1959. These returns included the income of Storm-Vulcan and Scranton Factors, the only two subsidiaries of Scranton to show income during those years. The net losses of Scranton and other subsidiaries were enough to offset the income of Storm-Vulcan and Scranton Factors.

The Internal Revenue Service disallowed the "consolidation," and assessed tax deficiencies against Storm-Vulcan and Scranton Factors. The basis for the disallowance was that all members of an affiliated group, which comprises the parent and all subsidiary corporations whose stock is at least 80 percent "owned" by the parent, must file a consent to the consolidation and the income of each must be included in the return, and Mutual Broadcasting System, Inc. (Mutual), "owned" by Scranton, did not file a consent and its income was not included in the return. The Internal Revenue Service, therefore, treated the income of each member of the consolidated group as returnable separately. The trustees contend that Mutual was not a member of the affiliated group for consolidated return purposes, and, therefore, that the deficiencies were erroneously assessed.

The trustees of Scranton undertook negotiations with the Internal Revenue Service at the various administrative stages. While the negotiations were being carried on, the trustees filed petitions to have the Tax Court make a determination of these matters. These petitions, it is contended, were filed to "protect the record" during the negotiating process. The trustees now seek to have this court assert jurisdiction over these matters and to restrain the Tax Court from proceeding.

While the issue of the ownership of Mutual is not before the court on the instant petition, for background purposes, the reoganization proceedings and Mutual's connection therewith may be briefly summarized as follows.

During 1958 and 1959, F. L. Jacobs Company, Detroit, Michigan (Jacobs), Scranton and Hal Roach Studios (Hal Roach) came under the domination of Alexander Guterma and associates. Jacobs held the majority of Scranton's outstanding capital stock and Scranton held all of the stock of Hal Roach. Guterma was chairman of the board of directors of the three concerns. During this time also, Hal Roach wholly owned or had 50 percent stock interests in Rabco T.V. Productions, Inc. (Rabco), W–R Corporation, Passing Parade Films, Inc. and R. & M. Productions, Inc. The trustees' investigations showed that these companies and others had been involved in numerous intricate and financial transactions apparently outside the ordinary course of business. Many of the transactions were not recorded on the books and records of the company and others were unauthorized. The officers of the companies, other than the Guterma group, were unaware of many of the transactions which included joint acquisition of companies, unusual borrowings, and guarantees by one company of the borrowings of another. One of these transactions included the purchase of Mutual. In September, 1958, Scranton and Hal Roach purchased all of the capital stock, and certain loans receivable, of Mutual. Hal Roach furnished the $250,000 down payment. For a portion of the balance of the purchase price Hal Roach and Scranton jointly made notes which were endorsed by Jacobs and Guterma as guarantors, and Scranton issued 20,000 shares of its common stock for the balance of the price. Apparently there is no evidence as to how the ownership of Mutual was to be considered between Scranton and Hal Roach. Six months later Mutual was sold at a substantial loss. By that time Scranton became guarantor of substantial obligations of Mutual. As a part of the sale consideration the purchaser agreed to furnish Scranton and Hal Roach over a period of years commercial announcement time aggregating $1,350,000. Four months later, however, Mutual filed in the United States District

Court for the Southern District of New York a petition for arrangement under Chapter XI of the Bankruptcy Act. Its arrangement called for a payment of 10 percent to general creditors, but after negotiations, it agreed to fully abide by its agreement to furnish Hal Roach and Scranton with the commercial announcement time. Hal Roach (subsequently sold) had no use for this time and so it was being used by Scranton alone to advertise its products. By virtue of fractional payments to Mutual's creditors, Scranton could incur substantial liability as a guarantor of Mutual's obligations.

In 1959, Guterma was convicted of violating federal securities laws and has since pleaded guilty to many other charges. Shortly after Guterma's arrest, Scranton, Hal Roach, Jacobs and Rabco filed petitions for reorganization under Chapter X of the Bankruptcy Act. Proceedings under the Bankruptcy Act have been filed by other firms, not mentioned in this summary, which were also involved in the unusual transactions. The trustees in each of these proceedings filed numerous claims and cross-claims arising from the unusual transactions previously described.

For bookkeeping purposes only the trustees have considered Scranton the owner of Mutual, and the amounts advanced by Hal Roach for the purchase of Mutual have been reflected as advances to Scranton. It is anticipated that the issue of Mutual's ownership and liability for its debts will be the subject of litigation between Scranton and Hal Roach at a future time, when this and other unusual transactions will be considered in determining the validity of intercompany claims.

Neither Storm-Vulcan nor Scranton Factors was brought in as a party to the reorganization proceedings in this court. Storm-Vulcan, located in Texas, is engaged in the business of manufacturing automotive engine rebuilding equipment, and is apparently a profitable enterprise and a leader in its field. Scranton Factors was initially formed to undertake factoring, but became a conduit through which Guterma siphoned off assets of Scranton and various of Scranton's subsidiaries. Its principal asset was a stock subscription receivable from Scranton. It apparently has no income and some liabilities.

The Government contends that this court has no jurisdiction over the matters pending before the Tax Court, and has no jurisdiction to enjoin the Tax Court from proceeding.

Section 111 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 511, provides in part:

"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

In commenting on this section as it relates to the bankruptcy court's jurisdiction over subsidiaries, it is stated in 6 Collier, Bankruptcy, ¶ 3.11, at pages 629–31 (14th ed.):

"Accordingly, in the case where a subsidiary is not undergoing reorganization, either because no petition has been filed by or against it or because it is not eligible to relief under Chapter X, the jurisdiction of the court wherein the parent's proceeding is pending presents special problems in relation to the subsidiary. Except in circumstances in which the parent and subsidiary are so completely 'one' that the corporate veil may be pierced with impunity and technicalities laid aside, the tendency of the courts, in general, is to interpret their jurisdiction over the debtor parent as limited to the parent's property ownership, i. e., to the stock held by the parent corporation. Hence the court in which the parent is being reorganized has no jurisdiction to enjoin an action against a subsidiary of the debtor, even though the debtor is a substantial shareholder, and though the outcome of the plan will be affected by the pending suit.

Such a suit is not against the debtor's property, since it is directed not against the debtor's stock but against the assets of the subsidiary. * * * "

The trustees have not argued, and at least in the case of Storm-Vulcan it does not appear, that there is a basis for "piercing the corporate veil." The trustees have not shown that Scranton, Storm-Vulcan and Scranton Factors are other than separate in organization, corporate structure, and operations. There is no indication that Scranton will have to pay the tax assessment if the disallowance is upheld. No deficiency has been assessed against Scranton by reason of the disallowance. Storm-Vulcan and Scranton Factors are not parties in any proceeding filed under the Bankruptcy Act. While Internal Revenue has filed a proof of claim against Hal Roach and Rabco in the reorganization proceedings before this court, the claim relates to FUTA and withholding taxes and not to corporate income taxes. If the only effect on Scranton's property would be the conjectural effect on Scranton's stock interest in the subsidiaries by reason of their payment of the tax assessment because of a decision adverse to them in the Tax Court, it would seem clear that the matter did not involve a controversy concerning Scranton or its property over which this court would have jurisdiction.

In re Adolf Gobel, Inc., 2 Cir., 1936, 80 F.2d 849; Cf. In re American Buslines, D.Neb.1957, 151 F.Supp. 877, 885.[1] The " * * * mere fact that there may be some repercussions on the bankrupt estate will not confer jurisdiction upon the court." In re Paddock of California, S.D.Calif.1964, 226 F.Supp. 43.[2] The interest involved in the other litigation must be the property of the debtor before the district court may assert its exclusive jurisdiction. See Callaway v. Benton, 1949, 336 U.S. 132, 143, 69 S.Ct. 435, 93 L.Ed. 553.

The facts of the instant case, however, present something more than another tribunal's assertion of jurisdiction over a controversy where the decision therein will have only a possible indirect effect on the debtor's estate. Scranton sustained a loss and the matter under litigation is Scranton's right to make available that loss as an offset against the subsidiary's profits, through the mechanics of a consolidated return. That this is Scranton's right is apparent from the fact that if Scranton did not choose to make this loss available by joining in the consolidated return, the current litigation by the subsidiaries would not exist. Western Pac. R. R. Corp. v. Western Pac. R. Co., 9 Cir. 1952, 197 F.2d 994, rev'd on other grounds, 1953, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986. 26 U.S.C.A. § 1501 et seq. In a broad sense this right is property of Scranton.[3] Cf. In re

1. In American Buslines the court considered as instructive on the question of its jurisdiction under Chapter X reorganization proceedings, decisions of courts concerning similar jurisdictional language under former Section 77B. In re Adolf Gobel, Inc. deals with jurisdiction under Section 77B.

2. For the relationship of provisions of Chapter X with provisions of other chapters and sections of the Bankruptcy Act, see 6 Collier, Bankruptcy, ¶ 0.12[1] and [2]. Where certain provisions are similar, cases interpreting the provisions under other chapters and sections are persuasive in interpreting Chapter X provisions.

3. In the dissenting opinion in Western Pacific, Judge James Alger Fee, 197 F.

2d at page 1008, referred to a party's right to use a loss for consolidated return purposes, as a property right which would furnish consideration for contractual liability between independent corporations of an affiliated group. The majority rejected the argument that a parent could exact a price for furnishing a loss to a wholly owned profitable subsidiary on the basis that, among other things, as sole owner of the stock of the subsidiary, the parent had a fiduciary duty to deal fairly with the creditors of the subsidiary, and a consequent duty not to require its subsidiary to forego a legitimate tax saving, and not to appropriate to itself an advantage which the tax law gives the subsidiary. The majority opinion recognized, however, that a parent may withhold consent to the filing of a

International Power Securities Corp., 3 Cir. 1948, 170 F.2d 399, 404. The trustees have primary control over whether it is appropriate to assert this right, and in this sense, the controversy relates more to an incident of Scranton's business and property than it relates to that of the subsidiaries. In fact, it is Scranton which has primary control of the proof as to whether it "owns" Mutual. The issue now pending also relates to the propriety of action taken by the trustees in the course of their administration as trustees in this proceeding.

The determination of the tax issue also directly relates in other ways to the property of Scranton and the subsidiaries which are included in these reorganization proceedings. The tax loss carryover and carry-back position of the various debtors in reorganization will be affected. In the case of two of the subsidiaries against which Internal Revenue Service in these proceedings has filed proofs of claim for FUTA and withholding taxes, the amount of tax loss carryback to offset those claims hinges on the validity of the consolidated return.

Moreover, the ownership of Mutual is an issue currently pending before this court in connection with proofs of claim filed by Hal Roach and Scranton against each other. While a decision with respect to "ownership" may differ for consolidated return and property right purposes, a finding of the basic facts may be the same for either purpose.

Thus, viewing both the ultimate and underlying issues before the Tax Court, a decision in connection therewith will have a direct effect upon the debtors' property rights so as to make the controversy one involving the debtors and their property over which this court has jurisdiction.

■■ The existence of jurisdiction over the matters before the Tax Court, however, does not mean that the bankruptcy court must necessarily assert its jurisdiction and restrain another forum, with jurisdiction over the same matter, from proceeding. Even when the controversy is within the exclusive jurisdiction of the bankruptcy court, that court in its discretion may postpone action pending the adjudication of the question in another forum. This is true whether the other forum be a state or federal court in the Judicial branch of the Government, or an administrative body in the Executive branch. Callaway v. Benton, supra, 336 U.S. at page 142, 69 S.Ct. 435; Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Best v. Humboldt Placer Mining Co., 1963, 371 U.S. 334, 338, 83 S.Ct. 379, 9 L.Ed.2d 350; 6 Collier, Bankruptcy, ¶ 3.08 et seq. (14th ed.). The fundamental basis for restraining an action outside of the reorganization court is that it unduly hinders, delays, burdens, or is inconsistent with the pending corporate reorganization. In re Otis & Co., N.D.Ohio 1952, 104 F.Supp. 201. The trustees have not demonstrated that the Tax Court action will so affect this proceeding.

consolidated return if the filing is detrimental or contrary to the interests of the parent. It is noted that the officers and directors of a parent also owe a duty to deal fairly with the parent's assets, and that the tax laws give advantages to a parent as well as a subsidiary. Because of tax loss carryforward and back provisions, it may be more prudent in a given case for a parent to preserve the loss unless for a consideration it is worthwhile to make the loss available to the affiliated group.

In any event, the majority opinion did not deny that the right to assert a loss is a property right. See also subsequent proceedings in the same action in 206 F.2d 495 and 216 F.2d 513. It is possible that under the facts of the case the earnings position of the corporations gave rise to a duty to make the loss available, while a different earnings position may not have given rise to the duty. For purposes of the instant petition there is no question of whether or not the loss should be made available, and evidence with respect to the various financial positions was not presented. For present purposes it is enough to point out that the underlying tax matter is a matter involving the debtor's property.

The issue before the Tax Court, the propriety of a consolidated return, is not before this court. Even though the underlying issue, the ownership of Mutual, will apparently depend on the determination of facts common to both proceedings, Storm-Vulcan and Scranton Factors should ordinarily be entitled to have their liability for the tax assessment, which amounts to about $400,000, determined expeditiously in a forum of their choice.

The trustees argue that the precise issues before the Tax Court can now be brought before this court by treating the instant petition as a petition for instructions as to whether they may file a consolidated return, and cite In re American States Public Service Co., D.Md.1935, 12 F.Supp. 667, aff'd sub nom. Burco, Inc. v. Whitworth, 4 Cir. 1936, 81 F.2d 721, cert. denied 1936, 297 U.S. 724, 56 S.Ct. 670, 80 L.Ed. 1008. If the instant petition is treated as a petition for instructions, that would not materially change the considerations on which this court must base the exercise of its discretion as to whether the other action should proceed. The tax matter is scheduled for trial within the next few months, in a forum chosen by two independent subsidiaries not parties to this reorganization. To the extent that the trustees were able to control, through Scranton's stock ownership, the choice of the forum, it could possibly be said that the trustees chose the Tax Court. It is the assets of the two independent subsidiaries which will be directly affected by a decision adverse to them in the Tax Court since, if the Internal Revenue Service prevails, there is returned to Scranton and others, for tax loss carry-forward and carry-back purposes, the loss which they made available to the profitable subsidiaries. If the subsidiaries prevail, Scranton is in no worse position since it loses for tax loss carry-forward and back purposes that which it voluntarily chose to lose by joining in the consolidated return. The decision of the Tax Court, a specialized forum, therefore, could substantially clear up several of the matters involved in these reorganization proceedings since a decision with respect to the propriety of the consolidated return could crystallize the tax loss carry-forward and back positions of the various concerns in this proceeding. This in turn could permit a determination of the tax liabilities of the concerns and, consequently, a determination of whether a set-off exists against the FUTA and withholding tax proofs of claim filed by Internal Revenue Service. Hearings with respect to such proofs of claim as yet have not been scheduled.

On the other hand, one burden that could result if the Tax Court is permitted to proceed is that the trustees may be required simultaneously to introduce or cause to be introduced evidence with respect to the fact of ownership if the Hal Roach-Scranton claims against each other, as they relate to Mutual, come on for hearing at the same time as the Tax Court matter. At the present time, however, this possibility cannot be foreseen, and can be controlled if it arises. And if it happens that the trustees are twice required to introduce or cause to be introduced such evidence, this burden does not seem so great when viewed in the light of the facilitation of these proceedings by a determination of the tax issue. Moreover, if in the future the present proceedings become burdened or delayed by the tax proceedings, appropriate steps to relieve these proceedings can be taken at that time.

It is noted that upon the assertion of tax liabilities Storm-Vulcan and Scranton Factors could have paid the tax and brought an action in the district court for its recovery. In its brief the Government asserts that such an action could have been brought in this court. Instead, they chose to not pay the tax, and to petition the Tax Court for relief. Thus, if this court were to assert jurisdiction over the tax matters, the result would be that two independent enterprises, not parties to the reorganization proceedings, would be able to resist payment of the taxes and nevertheless not be required

to obtain relief in the Tax Court. This is not consistent with the statutory scheme Congress intended for the determination of tax questions for ordinary taxpayers. In dealing with the questions of jurisdiction of the district court and the Tax Court, where full payment of the tax deficiency has not been made, the United States Supreme Court stated in Flora v. United States, 1958, 357 U.S. 63, at pages 75–76, 78 S.Ct. 1079, at page 1086, 2 L.Ed.2d 1165:

> "The foregoing study of the legislative history of 28 U.S.C. § 1346(a)(1) and related statutes leaves no room for contention that their broad terms were intended to alter in any way the Cheatham principle of 'pay first and litigate later.' * * * To ameliorate the hardship produced by these requirements Congress created a special court where tax questions could be adjudicated in advance of any payment. But there is no indication of any intent to create the hybrid remedy for which petitioner contends.

> " * * * Where the time to petition that court has expired, or where for some other reason a suit in the District Court seems more desirable, the requirement of full payment may in some instances work a hardship. But since any hardship would grow out of an opinion whose effect Congress in successive statutory revisions has made no attempt to alter, if any amelioration is required it is now a matter for Congress, not this Court."

A hybrid situation of a different sort exists here. It is true that in this case, and unlike Flora, the questions include more than the rights of those petitioning the Tax Court since substantial rights and issues affecting the debtors in this proceeding are also involved. It is unnecessary to decide, however, whether this difference would permit a determination of the tax issue in this proceeding even though the concerns against which the tax was assessed have not paid the tax and are not joined in this proceeding.

It is sufficient to state that the position of Storm-Vulcan and Scranton Factors in relation to the statutory scheme intended for the litigation of tax questions, together with the matters heretofore set forth, compel this court to exercise its discretion in favor of permitting the Tax Court action to proceed.

Section 2, sub. a(15) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(15) provides sufficient authority for this court in aid of its jurisdiction to restrain the Tax Court proceeding. In re Standard Gas & Electric Co., 3 Cir. 1943, 139 F.2d 149; In re International Power Securities Corp., supra. On the present record there is no showing that justifies the exercise of this power.

The petition of the trustees will be denied.